FILED

AUG 23 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JERRY WANZER, TDCJ #855976, | ) |
| Petitioner, | ) |
| VS. | ) Civil Action No: SA-02-CA-246-XR |
| KIM THU THI CHU, ET AL., | ) |
| Respondents. | ) |

## ORDER GRANTING CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendants Kim Thu Thi Chu, Kevin McKinney, Martin Nusynowitz, and David Uhbrock's Motion for Summary Judgment, filed April 27, 2004, Plaintiff Jerry Wanzer's Response in Opposition, filed June 22, 2004, and Defendants' Objections and Reply to Plaintiff's Response, filed June 30, 2004.[1] Having considered the evidence, written briefs, and applicable law, the Court concludes that Plaintiff has failed to raise a question of material fact regarding whether these defendants were deliberately indifferent to his medical needs. Accordingly, the Court GRANTS these Defendants' Motion for Summary Judgment (docket # 95), and dismisses

---

[1] Defendants' objections are overruled. Defendants object "to the entirety" of Plaintiff's declaration "because there is no indication that Plaintiff has personal knowledge of the statements made." However, it is self-evident from Plaintiff's affidavit, which merely describes his complaints and treatment, that he has personal knowledge of the information discussed therein. Further, Defendants' objections that certain statements in Plaintiff's affidavit are conclusory (objections 2, 3, 4, 5, 6, and 7) are overruled as meritless. Objection no. 3 that Plaintiff is incompetent to testify about what the medical records reflect is overruled because Plaintiff's statement does not refer to or otherwise attempt to state what the medical records reflect. To the extent that Defendants object to Plaintiff's statement that the doctors' actions amounted to deliberate indifference because that is a legal conclusion, the Court agrees. However, this statement appears to be related to when Plaintiff understood that he had a cause of action, not necessarily to whether defendants violated his rights. In any event, the Court will determine whether the doctors' actions constitute deliberate indifference because that issue a question of law.

In addition, Defendants' motion to strike Plaintiff's response (docket # 106) is denied. Plaintiff has demonstrated good cause for the delay in filing the response and had also informed the Court that the response could be delayed pending settlement discussions, which proved unfruitful. In addition, Defendants were not harmed by the delay.

1



with prejudice Plaintiff's claims against Defendants Chu, McKinney, Nusynowitz, and Uhbrock.

**BACKGROUND**

Jerry Wanzer is an inmate at the John B. Connally Unit who claims that the defendant doctors failed to attend to his medical needs in violation of the Eighth Amendment. According to Plaintiff's Complaint and declaration in response to the motion for summary judgment, in 1998, he began feeling weak and experiencing weight loss while incarcerated at the Tarrant County Jail. After conducting a blood test and thyroid scan that revealed nodules on Plaintiff's thyroid, doctors diagnosed Wanzer with Graves' Disease. Graves' Disease involves a thyroid dysfunction that affects virtually all processes of the body ranging from how fast one thinks to how often one has a bowel movement. National Graves' Disease Foundation, *Frequently Asked Questions About Graves' Disease*, http:// www.ngdf.org.faq.htm, (last visited August 12, 2004). Wanzer elected to treat the Graves' Disease with radiation and began taking Atenolol, a drug used to treat a heart irregularity Plaintiff had developed as a result of the thyroid malfunction. However, Wanzer later elected to postpone the radiation treatment so that he could fully participate in his upcoming criminal trial. Wanzer proceeded to trial on January 4, 1999, and was convicted. He was transferred to TDCJ-ID later that month, without having had the radiation treatment. At the intake center, he was again prescribed Atenolol. He was transferred to the John B. Connally unit on February 16, 1999.

At the John B. Connally Unit, Wanzer was examined by a physician's assistant, and Plaintiff informed the assistant that he had Graves' Disease. Blood was drawn and Plaintiff was placed on a special diet to control weight loss. Dr. Herrera examined Plaintiff on April 23, 1999, and informed him that more blood tests would be needed. On May 24, 1999, Plaintiff alleges that he waited over five hours to see the doctor, and eventually requested to be rescheduled because the wait on the hard

2

steel bench had made him sicker. On June 29, 1999, Plaintiff was seen by Defendant Dr. Steven Mercado, who examined him and then referred him to John Sealy Hospital.

On September 5, 1999, Plaintiff's prescription for Atenolol was discontinued, and when Plaintiff sent a request as to why, he was told that it was no longer needed because his symptoms had resolved.

On December 7, 1999, Plaintiff was finally taken to John Sealy Hospital, more than five months after Dr. Mercado's referral. Plaintiff alleges that he had blood drawn and was seen by Doctors Kim Thu Chu and Kevin McKinney. However, the summary judgment evidence indicates that he was in fact seen by Dr. S. Chen, not Dr. Chu. Plaintiff alleges that Dr. McKinney did not perform a physical examination on him, but merely reviewed the blood test results. Defendants submitted evidence that Dr. Chen performed a physical examination on Plaintiff and felt a small right neck mass. Dr. Chen's diagnosis/impression notes state "questionable hyperthyroidism – Pt [patient] has some sxs [symptoms] that correlate [with] hyperthyroidism, but physical exam is unremarkable ... Pt may have had mild thyroiditis in the past, but currently doesn't meet criteria. Advise unit M.D. to contact Pt's family for old records on previous workup back in 2/98." Dr. McKinney noted on the chart "Pt evaluated by me in conjunction with Dr. Chen – agree with findings." In his affidavit, Dr. McKinney states that Plaintiff's "physical exam was unremarkable except for a right neck mass that wasn't necessarily related to the thyroid gland. Recent laboratory testing before then showed a normal thyrotropin (Thyroid stimulating hormone; TSH) level. The diagnosis was euthyroid state (normal thyroid function) and that no further work up was needed." Defendants contend that the doctors agreed that there were no physical signs of thyroid enlargement or abnormalities in Plaintiff's blood levels. But Plaintiff alleges that they ignored his complaints of

3

continuing muscle fatigue and weakness, weight fluctuations, excessively frequent bowel movements, and other problems.[2] He further complains that the doctors did not perform a thyroid scan or attempt to treat his symptoms.

Upon returning to his unit, Plaintiff placed several requests to the medical provider to find out what they intended to do to treat his condition and to determine why his special diet had been discontinued. He placed three requests in April and May 2000 regarding his diet and asking to see a doctor for his thyroid condition. Plaintiff was seen again by Dr. Mercado on May 30, 2000. Plaintiff complained of continuing symptoms of weight loss, frequent bowel movements, muscle and body weakness, intolerance to heat and cold, chest pains, and frequent headaches, but Dr. Mercado told him that his blood test results indicated that his thyroid levels were within normal limits. Plaintiff told Dr. Mercado that he believed the blood tests were incapable of detecting the problem because his thyroid had been untreated for so long, and requested a thyroid scan. Dr. Mercado then felt Plaintiff's neck and detected a small lump. Dr. Mercado referred Plaintiff to John Sealy's endocrinology department for a thyroid scan.

Plaintiff alleges that several months passed and he had to file several grievances before he was finally re-admitted to John Sealy Hospital on October 24, 2000. Plaintiff complained of weight loss, fatigue, weakness, frequent bowel movements, and cold intolerance. He had his blood drawn, and was told by a doctor that the blood levels appeared normal. Plaintiff's medical records (Bates No. 47) reflecting Plaintiff's blood test results list the admitting physician at "Chu M.D., Kim Thu

---

[2] Plaintiff's complaint alleges that he told the doctors that a prior thyroid scan showed nodules on his thyroid and that the results were available through M.D. Anderson. He alleges that he tried to provide a copy of his medical file to these doctors through his mother, but they refused the information. Plaintiff did not submit any summary-judgment evidence to support these allegations, and the medical records submitted by Defendants indicate that Dr. Chen did note in the records that Plaintiff's 2/98 results should be consulted.

4

Thi" and the ordering doctor as "McKinney M.D., Kevin H." Plaintiff states that, despite his complaints, Dr. McKinney did not order any further testing or any treatment at all. Defendants submitted the affidavit of Dr. Nusynowitz, who states that Plaintiff was seen by Dr. John Curanovich, who conducted a physical exam and ordered blood tests. Dr. Nusynowitz testified in his affidavit that the tests showed all normal results, which excluded the possibility of hyperthyroidism or any other condition relative to the thyroid necessitating medical care. Plaintiff was returned to his unit without a thyroid scan.

Plaintiff states that he sent a sick call request on November 20, 2000, asking if he was going to receive any treatment for his complaints. He alleges that Dr. Mercado stated that he had been seen by an endocrinology specialist, that the specialist did not want to do anything about his thyroid, and that he agreed.

Plaintiff alleges that his health continued to deteriorate, with his chest pains and headaches becoming more frequent. Plaintiff placed a medical request on December 23, 2000. On March 5, 2001, Plaintiff was seen by a medical assistant at his unit, Verlis Felkins, who told Plaintiff that he would not receive treatment for his symptoms. Plaintiff filed a grievance about Felkins' refusal to treat him on March 7. He states in his declaration that he was told by Defendant Rochelle McKinney that he was being refused any further testing.

Plaintiff sent another request to the medical provider in July. He was seen by Dr. Joseph Vadas on August 7, and complained to Dr. Vadas of chest pains, severe headaches, and breathing problems. He alleges that Dr. Vadas examined him, reviewed his records, and determined that he had a serious thyroid condition. Dr. Vadas referred him to John Sealy's endocrinology department for treatment.

On August 20, 2001, Plaintiff was re-admitted to John Sealy Hospital. Plaintiff alleges that he was treated by Dr. Maria Payan and Dr. Martin Nusynowitz. Dr. Nusynowitz says he does not recall seeing Plaintiff that day and that the medical records indicate that Plaintiff was seen that day by Dr. Roger Solomon and Dr. Jerome Rourke.[3] The doctor told Plaintiff that he would need to drink radioactive dye and have a thyroid scan. Plaintiff drank the radioactive dye, but did not receive the scan. Instead, he was returned to his unit without further testing or treatment.

Plaintiff saw medical assistant Reginald Smith at his unit on September 24, 2001. Smith examined Plaintiff's neck and felt a small nodule. Plaintiff was admitted to the John Sealy Hospital Nuclear Medicine Clinic on October 29, 2001, where he was examined by Dr. David Uhbrock and Dr. Nusynowitz. Plaintiff received a thyroid scan on October 31, 2001. Plaintiff alleges that although Drs. Uhbrock and Nusynowitz identified a lump in his neck, they did not order any treatment or follow-up testing other than the thyroid scan. Dr. Nusynowitz testified in his affidavit that the tests revealed a normal thyroid and that no further diagnostic study was needed.

Plaintiff returned to UTMB on July 16, 2002, at which time blood results again indicated that his thyroid function was normal. On August 30, 2002, Plaintiff's total white blood count was low with low granulocytes and relatively elevated eosinophil count, which the doctors state could be explained by allergy or parasite infection. However, Dr. Nusynowitz stated that this condition was not present in October 2001 nor could it be foreseen by Dr. Uhbrock or Dr. Nusynowitz when they evaluated Plaintiff at that time.

Dr. Nusynowitz further stated that a fine needle aspiration biopsy of submental lymph node

---

[3] Dr. Nusynowitz's affidavit states that "Mr. Wanzer's allegation in his lawsuit that he was seen on August 20, 2001 by a Dr. Maria C. Payan is correct." However, it appears that this is a typographical error, since from the context of the surrounding text, it appears he meant "incorrect."

was done on September 9, 2002, "presumably the same [neck] mass felt at [the December 7, 1999] visit," and found to show benign findings of reactive hyperplasia. Dr. McKinney also testified in his affidavit that the mass was determined to be nonthyroidal by the otolaryngology clinic, and was confirmed from biopsy by cytopathology. Dr. McKinney states that the lump was determined to be a reactive lymph node. Although Dr. McKinney discusses the mass in proximity to the October 31, 2001 timeframe and does not specifically provide a time frame for this evaluation, presumably he is referring to the September 2002 testing of the neck lump. There is no indication in the records whether this reactive lymph node was a possible cause of Plaintiff's symptoms, whether it required treatment, or whether any treatment was prescribed.

Plaintiff alleges that the defendant doctors at John Sealy Hospital have been deliberately indifferent to his medical needs by their refusal to provide all the necessary tests (i.e., head and body scans) needed in order to identify and treat his condition. In his objections to the magistrate judge's report and recommendation, Plaintiff stated that he filed this suit because of the constant delays and not being treated for an unknown medical condition that has been and continues to cause him numerous problems. He also complains that the doctors spent too much time determining that he did not have a thyroid problem rather than finding out what he did have, and failed to do anything to relieve his symptoms. He states that, to this date, he has never received treatment for his symptoms nor has anyone told him what is causing his symptoms. He alleges that the delay in treating him has lead to other complications, such as chest pains, headaches, and lumps forming under his chin that makes breathing more difficult, as well as increasing the risk that his condition will become life-threatening.

## Applicable Law

Summary judgment is appropriate if, after adequate time for discovery, no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Where the issue is one for which the nonmoving party bears the burden of proof at trial, it is sufficient for the moving party to identify those portions of the record that reveal the absence of a genuine issue of material fact as to one or more essential elements of the nonmoving party's claim. *Id.* at 323-24. The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Id.* Upon viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party, the court, in order to grant summary judgment, must be satisfied that no rational trier of fact could find for the nonmoving party as to each element of his case. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

Wanzer claims that Drs. Chu, McKinney, Nusynowitz and Uhbrock acted with deliberate indifference to his medical needs. The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally, the plaintiff must show that defendants acted or failed to act with deliberate indifference to that risk. *Id.* The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendants were actually aware of the risk yet consciously disregarded it. *Id.* at 837, 839.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of*

*Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference cannot be inferred from defendant's mere failure to act reasonably, *i.e.*, it cannot be inferred from negligence alone. *Lawson v. Dallas County*, 286 F.3d 257, 262-63 (5th Cir. 2002) (citing *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir.1996) (en banc)). Rather, to prove an individual acted with deliberate indifference, a plaintiff must show that the individual "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Domino*, 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 838). Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Id.* (quoting *Estelle*, 429 U.S. at 107).

## Analysis

Plaintiff's complaints span several years and involve numerous defendants. However, even when a Plaintiff alleges such a pattern of neglect, each defendant's subjective indifference must be examined separately. *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

Dr. Kim Thu Thi Chu's motion for summary judgment is granted. Dr. Chu's affidavit states that during the time Wanzer was in the hospital, Dr. Chu worked in the department of Obstetrics and Gynecology and did not provide medical treatment to male patients. Further, the medical records indicate that the doctor who examined Plaintiff on December 7, 1999 was in fact Dr. S. Chen, and not Dr. Chu. However, as noted, there is some indication in the medical records (Bates No. 47) that the admitting doctor for Plaintiff's October 24, 2000 visit was Dr. Chu. Nevertheless, there is no

evidence that Dr. Chu actually treated Plaintiff on that visit. Accordingly, because there is no evidence that Dr. Chu treated Plaintiff or was otherwise responsible for his medical care, summary judgment is appropriate.

Wanzer alleges that Dr. McKinney failed to give him a thyroid scan and failed to properly diagnose and treat his continuing symptoms. Plaintiff's medical records indicate that he had a blood test and that a Dr. S. Chen performed a physical examination of Wanzer's head, ears, nose, throat, neck, lungs, chest and heart. Dr. Chen's notes indicate a small neck mass ("questionable thyroid mass"). Dr. Chen noted that the examination was unremarkable and that Wanzer did not currently meet the criteria for thyroiditis. Dr. McKinney noted on the chart that he evaluated Plaintiff in conjunction with Dr. Chen and agreed with her findings and plan. Dr. Chen also noted "Advise unit M.D. to contact Pt's family for old records on previous workup back on 2/98." Plaintiff was discharged from the endocrinology clinic without further testing. Dr. McKinney's affidavit states that, on the December 7, 1999 visit, Plaintiff's "physical exam was unremarkable except for a right neck mass that wasn't necessarily related to the thyroid gland. Recent laboratory testing before then showed a normal thyrotropin level. The diagnosis was euthyroid state (normal thyroid function) and that no further workup was needed." Dr. Nusynowitz, testifying as an expert, stated in his affidavit that the medical records indicate that Dr. McKinney and Dr. Chen provided appropriate medical care to Plaintiff and were not indifferent to his complaints, as manifested by a request for previous medical records. He states that both Drs. Chen and McKinney agreed that Plaintiff did not meet the criteria for hyperthyroidism and nothing in the medical records indicates that their assessment was incorrect. Dr. Nusynowitz states that thyroid scan was not necessary and no additional medical care was needed.

To survive summary judgment, Wanzer must present a fact issue regarding McKinney's deliberate indifference to his medical needs. McKinney reviewed Dr. Chen's evaluation and the blood test results and concluded that no further treatment was needed. Plaintiff has not submitted any medical reports, expert testimony, or other summary-judgment evidence demonstrating that he suffered from a serious medical condition that was obvious that Defendant failed to treat. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 527 (5th Cir. 1999). Liability attaches only if the defendant actually knew – not merely should have known – about the risk. *Id.* Failure to recognize a risk is at most negligence, and does not rise to the level of deliberate indifference. Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999). The decision whether to conduct additional diagnostic tests or provide additional treatment is a matter for medical judgment, and disagreement with the prescribed medical treatment, or lack thereof, does not state a claim for Eighth Amendment indifference to medical needs without a showing that the defendant had actual knowledge of a substantial risk but consciously disregarded it. *Domino*, 239 F.3d at 756. Because Dr. McKinney conducted tests and concluded that no further testing or treatment was necessary, Plaintiff has at most established that McKinney was negligent or failed to act reasonably, which is insufficient to establish deliberate indifference. *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000).

The same result obtains with regard to Dr. McKinney's treatment of Wanzer in October 2000. Dr. Nusynowitz testified that Plaintiff's thyroid testing showed all normal results, which excluded the possibility of hyperthyroidism or any other condition relative to the thyroid necessitating medical care. Dr. Nusynowitz further testified that a thyroid scan was not necessary at that time. Dr. McKinney testified that, during the period of December 7, 1999 to October 31, 2001, Plaintiff

11

received medical care that was appropriate, in accordance with UTMB policy, and consistent with nationally established standards of care. During that time, Dr. McKinney states, Plaintiff did not have Graves Disease, thyroidism, or "any kind of serious medical need."

Wanzer also claims that Drs. Nusynowitz and Uhbrock acted with deliberate indifference. Medical records indicate that Plaintiff presented to Drs. Nusynowitz and Uhbrock for thyroid evaluation in October 2001. Dr. Uhbrock noted that Plaintiff had questionable hyperthyroidism and ordered that thyroid tests, including a thyroid scintigram (thyroid scan), be conducted. Blood tests and the thyroid scan were conducted and indicated normal thyroid function. The doctors concluded that no further diagnostic study was needed. The evidence indicates that defendants evaluated a patient who presented for thyroid evaluation and concluded that thyroid function was normal. There is no indication that the defendants showed deliberate indifference to Plaintiff's medical needs. Even if Plaintiff is correct that Dr. Nusynowitz treated him in August 2001, when he drank radioactive dye but did not receive a scan, this alone does not demonstrate deliberate indifference. Dr. Nusynowitz gave Plaintiff the scan in October 2001 and it revealed normal thyroid function.

Wanzer also argues that even if the doctors correctly ruled out a thyroid deficiency, the doctors failed to take any action to alleviate his symptoms, which he claims amounts to deliberate indifference. However, deliberate indifference cannot be proved because a doctor has a difference of opinion as to the appropriate method of treatment under the circumstances. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (holding that an inmate with a rectal disorder did not have a deliberate indifference claim when doctor did not attempt different diagnostic measures or attempt alternative method of treatment when the current treatment did not eradicate the problem); *see also Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) (mere negligence in giving or failing to supply

medical treatment would not support an action under section 1983). In addition, as noted, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Domino*, 239 F.3d at 756. The defendant doctors performed tests and evaluations on several occasions and concluded that no additional treatment was necessary.[4] Although the Court understands Plaintiff's complaint that doctors have focused solely on his thyroid and have not treated his symptoms, his complaints at most amount to negligence, not deliberate indifference. Plaintiff had a history of thyroid disease and had symptoms consistent with thyroid disease, so the doctors appropriately attempted to rule out thyroid disease as the cause of the problem. Although they may not have diagnosed the actual cause of the problem, that failure does not appear to be the result of deliberate indifference.

In sum, Wanzer fails to raise a genuine issue of material fact related to his treatment because deliberate indifference requires more than a disagreement over what a doctor considers to be appropriate treatment. Wanzer argues that his symptoms were never treated, and therefore the doctors are guilty of deliberate indifference. The Court understands Plaintiff's frustration with the fact that he has not received a definitive diagnosis nor a satisfactory resolution to his continuing symptoms. However, both Drs. Nusynowitz and McKinney testify in their affidavits that Wanzer received medical examinations appropriate with nationally recognized standards of care. Plaintiff received physical examinations, blood tests, and finally a thyroid scan. From these, the doctors determined that no additional medical care was needed on each visit. Plaintiff's claim amounts at most to a claim that the doctors were negligent in failing to diagnose the cause of his symptoms or

---

[4]The Court recognizes that there were sometimes long delays between referrals and admissions to John Sealy. However, there is no indication in the summary judgment evidence that these defendant doctors were in any way responsible for those delays.

13

in determining that no further diagnostic measures, treatments, or referrals were required. His allegations fall short of raising a fact issue regarding whether the doctors were deliberately indifferent to a serious medical need. Accordingly, these Defendants are entitled to summary judgment.

## Conclusion

Defendants' Motion to Strike Plaintiff's Response (docket # 106) is DENIED. Plaintiff's Motion to Extend Time (docket # 105) is DISMISSED AS MOOT. Defendants' Motion for Summary Judgment (docket # 95) is GRANTED. Plaintiff's section 1983 claims against Defendants Chu, McKinney, Nusynowitz, and Uhbrock are DISMISSED WITH PREJUDICE.

Signed this 23rd day of August, 2004.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE