FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DEC 1 6 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

JERRY WANZER,                          )
                                       )
        Petitioner,                    )
                                       )
VS.                                    )     Civil Action No: SA-02-CA-246-XR
                                       )
KIM THU THI CHU, ET AL.,               )
                                       )
        Respondents.                   )

## ORDER

On this date, the Court considered various[1] Defendants' Motion for Summary Judgment (docket no. 122), and the responses and replies thereto. After careful consideration, the Court will GRANT the motion.

## BACKGROUND

Plaintiff Jerry Wanzer was born on December 7, 1962. At the time he entered into the Texas Department of Criminal Justice (TDCJ) Connally Unit in January 1999, it was noted that he previously suffered from a thyroid disorder, Graves disease, and depression. In January 1999, Plaintiff weighed 174 pounds and was measured as having a height of 73 inches.[2]

He has filed this lawsuit under 42 U.S.C. § 1983 complaining that personnel at his prison unit and doctors who treated him at the University of Texas Medical Branch at Galveston ("UTMB") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

---

[1]This motion has been filed by Stephen Mercado, M.D., Verlis Felkins, P.A., Tonia Black, Rochelle McKinney, R.N., Oscar Mendoza, Robert Parker and Steven Green.

[2]*See* Exhibit E to motion for summary judgment, p. 147.

1

148.

This Court previously granted summary judgment in favor of the UTMB doctor defendants in this case.

In his response to the Defendants' motion for summary judgment, Plaintiff states that since 1999 he has been suffering from various ailments.[3] Plaintiff complains that prison medical providers have failed to ascertain the cause of his ailments. Further, he complains that when he was prescribed a 5,000 calorie medical diet for his weight loss, the medically ordered diet was denied to him.

It appears that a high calorie diet was prescribed for Plaintiff on different occasions. On June 29, 1999, Plaintiff's weight dropped 11 pounds in six months and was charted at 163 pounds. M. McKaui, P.A. prescribed a 5,000 calorie diet for 90 days.[4]  On July 13, 1999, a reference in Plaintiff's medical records indicate that Plaintiff is on a *hypercaloric diet* inasmuch as he is three pounds below minimum weight recommendations.[5] There is a difference between a 5,000 calorie diet and a TDCJ hypercaloric diet, which will be explained below in further detail.

A medical record dated July 29, 1999, appears to address the fact that TDCJ's food service operations do not recognize a 5,000 calorie diet.  This notation instructs Plaintiff to eat all portions of his three meals plus the morning and afternoon snacks that are given to him, which would provide him 3,000 to 4,000 calories per day.   This notation comports with TDCJ's definition of a hypercaloric diet. The notation also states that Plaintiff's chart will be submitted to a medical doctor in order to change Plaintiff's diet order to a hypercaloric diet and not a 5,000 calorie diet.  The

---

[3]Fatigue, frequent bowel movements, weight loss, cold intolerance, dry hair, chest pains and severe headaches.  He was diagnosed with a thyroid disorder.  His medical records also indicate he suffers from an unspecified psychiatric disorder.

[4]*See* Exhibit E to motion for summary judgment, pp. 372-73.

[5]*Id.* at 372.

notation was signed by a dietician, H.R. Halleman, L.D.[6]  On July 30, 1999, S. Mercado, M.D. ordered Plaintiff's diet changed to a  hypercaloric diet.[7]

A notation dated January 21, 2000, signed by V. Felkins, P.A. indicates that Plaintiff's high calorie diet had expired (no expiration date stated) and that "no special diet was needed."[8]  Felkins again indicated on March 3, 2000, that "no special diet was needed."[9]  On May 5, 2000, Plaintiff, however, presented complaints to a psychiatrist that he was taken off his special diet.  A medical record dated May 13, 2000 indicates his weight at that time was 158 pounds.[10]  The psychiatrist informed him that he was on a regular diet and had been placed on a regular diet since December 1, 1999.[11]

After numerous visits where Plaintiff presented concerns about his weight, a notation dated July 17, 2000 entered by Dr. Mercado, states that "patient does not meet criteria for nutritional supplement."[12]  At that time Plaintiff's weight had dropped to 153 pounds.[13]  Despite the fact that Plaintiff gained five pounds,[14] on September 28, 2000, Dr. Mercado placed Plaintiff on a

---

[6]*Id.* at 371.

[7]*Id.* at 371-372.

[8]*Id.* at 358.

[9]*Id.* at 357.

[10]*Id* at 354.

[11]*Id.* at 355.

[12]*Id.* at 348.

[13]*Id.* at 348.

[14]*Id.* at 158.

hypercaloric diet for 180 days.[15]  By February 22, 2001, Plaintiff's weight increased to 161 pounds, and he was placed on a regular diet.[16]

In July 2001, Plaintiff again requested a high calorie diet.  On August 1, that request was denied by V. Felkins.[17]  Plaintiff's weight on August 7 is charted at 164 pounds.[18]

However, by September 24, Plaintiff's weight dropped to 153 pounds,[19] and on September 27, 2001, a physician once again ordered that Plaintiff begin receiving a hypercaloric diet for 90 days.[20]  The medical records become sketchy at this point, and it appears that the high calorie prescription expired at some point (whether in December 2001 or later is not certain) and was again restarted on May 29, 2002[21] and June 17, 2002 for 180 days by M. Herrera, M.D.[22]

Apparently Plaintiff's weight improved during this period.  Plaintiff gained six pounds, and on November 20, 2002, Plaintiff weighed 165 pounds.  His medically acceptable weight range was between 166 pounds and 202 pounds.[23]

Plaintiff thereafter again began to complain of weight loss, and a notation dated May 6, 2003,

---

[15]*Id.* at 158.

[16]*Id.* at 335.

[17]*Id.* at 327.

[18]*Id.* at 327.

[19]*Id.* at 321.

[20]It is uncertain who prescribed the special diet.  The signature is illegible.  *Id.* at 319.

[21]*Id.* at 154.

[22]*Id.* at 301.

[23]*Id.* at 275.

reflects that he was prescribed Ensure, an osmolite nutritional drink. From October 24, 2002 though November 22, 2002, Plaintiff was prescribed 1 can per day of Ensure,[24] and from November 25, 2002 through March 25, 2003, Plaintiff was prescribed 3 cans per day of Ensure.[25] On March 4, 2003, Plaintiff's weight was noted at 169 pounds.[26] The medical records no longer discuss weight issues after this time period. It appears, however, that Plaintiff remained on a hypercaloric diet through December 2003. In an "advisory" filed by Plaintiff on November 5, 2004, Plaintiff complains that he is still not receiving adequate medical attention, that unspecified prison officials are making "verbal threats of harm" against him, that false disciplinary reports are being lodged against him, and he requests that this Court order TDCJ to send Plaintiff to an independent medical facility to "determine if [he] is truly suffering from a serious medical condition."

## ANALYSIS

### Eighth Amendment Claim

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104.

> But the Court cautioned that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth

---

[24]Id. at 123.

[25]Id. at 201.

[26]Id. at 152.

Amendment. Furthermore, a prison official is deliberately indifferent to a prisoner's serious medical needs only when 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'

*Hasty v. Johnson*, 103 Fed. Appx. 816, 818-19 (5th Cir. 2004).

### Claims against Dr. Mercado

Plaintiff alleges that Dr. Mercado has failed to conduct adequate testing to determine whether he has a thyroid problem. Despite Plaintiff's conclusory statement and subjective complaints in this regard, the Court has undertaken a thorough review of Plaintiff's medical records and finds that an extensive battery of tests have been administered to Plaintiff. These tests have revealed that, if there was any thyroid problem (as evidenced by a low TSH level for which medications were administered), that problem had resolved by June 29, 1999. *See* Affidavit of Dan Kelley, M.D., attached as Exhibit D to Defendants' Motion for Summary Judgment. Plaintiff is unable to establish that Dr. Mercado has been negligent, much less stating a valid claim of medical mistreatment under the Eighth Amendment. *Hasty,* 103 Fed. Appx. at 818-19.

Plaintiff further claims that Dr. Mercado violated his constitutional rights by apparently acquiescing on July 30, 1999 to the change from a 5,000 calorie diet to a hypercaloric diet. This claim fails as well.[27] The chief dietician for the TDCJ Correctional Managed Care, K. Reddy, creates 12-month therapeutic diets to meet the medical needs of offenders who are prescribed special diets. One of the special diets created by K. Reddy is the hypercaloric diet. "It is prescribed for patients with chronic infectious diseases that, due to the stresses of the disease, require additional calories

---

[27]This claim is also barred by limitations.

6

beyond those provided by a regular menu. The hypercaloric diet provides 3,000 - 4,000 calories per day." *See* Affidavit of Kuchukulla Ashok Reddy, M.S., R.D., attached as Exhibit A to Defendants' Motion for Summary Judgment. Food service personnel in the prison may not modify these approved special menus. *Id.* Further, Reddy has testified that if a medical doctor should prescribe a 5,000 calorie diet, it is TDCJ policy to have the diet "re-prescribed" as a hypercaloric diet to comply with food service policy. *Id.* If a patient requires additional calories beyond what is provided in the hypercaloric diet, a medical doctor must prescribe one or more Ensure diet supplement drinks. *Id.* Even assuming that Plaintiff could establish that a reasonably prudent medical doctor would have prescribed one or more Ensure diet supplement drinks after revising his order modifying the 5,000 calorie diet to the TDCJ hypercaloric diet, malpractice or negligent care does not rise to the level of a constitutional violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983").

Further, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Plaintiff has failed to tender any evidence that Dr. Mercado was deliberately indifferent or that Plaintiff suffered from "serious medical needs." *See* Affidavit of Dan Kelley, M.D., attached as Exhibit D to Defendants' Motion for Summary Judgment.

### Claims against V. Felkins, P.A.

Plaintiff alleges that from October 17, 2000 through April 17, 2001, Felkins ordered that he

be placed on a 2,000 calorie diet.  See Exhibit B to Plaintiff's Response to Defendants' Motion for Summary Judgment.  These diet logs conflict, in part, with Plaintiff's medical records.  As stated above, the medical records indicate that on September 28, 2000, Dr. Mercado placed Plaintiff on a hypercaloric diet for 180 days.  By February 22, 2001, Plaintiff's weight increased to 161 pounds, and he was placed on a regular diet.  Despite the discrepancy, for the reasons applicable to Dr. Mercado, summary judgment is still nevertheless proper in favor of Felkins.  At most Plaintiff may have established negligence, but Plaintiff has failed to tender any evidence that Felkins was deliberately indifferent or that Plaintiff suffered from "serious medical needs."

**Claims against Tonia Black**

Black is a Food Service Manager at the Connally Unit.  She is responsible for supervising kitchen activities.  Other than alleging in a conclusory fashion that Black was "deliberately indifferent" to his "serious medical needs," it is difficult to precisely ascertain what acts Plaintiff is specifically complaining of with regard to Black.  The Court assumes that Plaintiff is alleging that despite being initially prescribed a 5,000 calorie diet, Black refused to provide him with such a diet.

Black testified that the chief dietician creates menu plans, and that she directs that meals are prepared and served in conformity with those plans.  Black testified that on two separate occasions she noticed that Plaintiff was prescribed a 5,000 calorie diet, and that she recognized that such a diet was not a recognized TDCJ meal.  She testified that after noticing the 5,000 calorie prescription she went to speak to the Director of Nurses for guidance.[28]  She testified that after speaking to the nurse

---

[28]Plaintiff objects on hearsay grounds to Black's affidavit, in part, wherein Black states that the Director of Nurses instructed her to prepare hypercaloric diets in lieu of the 5,000 diet. The Court has not relied upon any hearsay statements that may have been contained in Black's affidavit.

8

she provided Plaintiff with a hypercaloric diet.  Black also testified that on one occasion Plaintiff directly provided her with a "pass" stating that Plaintiff should be provided double meat portions. She testified that she took the pass from Plaintiff to determine its validity since such documents are normally provided to the food services department by the medical department.  Black testified that she took the pass to the Director of Nurses for guidance.  She testified that after speaking to the nurse she only provided Plaintiff with a hypercaloric diet.  Finally, she testified that she had no knowledge that he was suffering from any specific medical problem.  Plaintiff has failed to tender any evidence that Black was deliberately indifferent or that Black knew that Plaintiff suffered from any "serious medical needs."

### Claims against Rochelle McKinney, R.N.

Plaintiff alleges that McKinney, who is allegedly employed as a patient liaison, informed him that the medical providers were not going to provide him any further testing.  The Court assumes that Plaintiff is alleging that he complained to McKinney about the alleged lack of medical care and that she did not resolve the complaints to his satisfaction.  Plaintiff has failed to tender any evidence that McKinney was deliberately indifferent or that Plaintiff suffered from any "serious medical needs."

### Claims against Oscar Mendoza, Robert Parker and Steven Green

Other than identifying Mendoza and Parker as "wardens" and Green as an "investigator," Plaintiff does not make any other specific allegations in his complaint.  The Court assumes that Plaintiff is alleging that he complained to these three defendants about the alleged lack of medical care and alleged denial of his 5,000 calorie meal, and that they did not resolve the complaints to his satisfaction.  Plaintiff has failed to tender any evidence that Mendoza, Parker or Green were deliberately indifferent or that Plaintiff suffered from any "serious medical needs."

9

**Conclusion**

Defendants' motion for summary judgment (docket no. 122) is GRANTED.  Defendants' motion for reconsideration of Court's Order dated February 24, 2003 (docket no. 136) is DISMISSED as moot.  Inasmuch as the Court has previously granted summary judgment to former defendants Chu, K. McKinney, Nusynowitz and Uhbrock (see docket no. 120) and Plaintiff has never served the remaining three defendants (John Doe #3, Maria Payan and Gerald Myers), this case is DISMISSED with prejudice.

Signed this 16th day of December, 2004.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE